Edward T. McCaffrey, J.
Plaintiffs move for an order enjoining and restraining the defendants from dividing the partolmen employed by the Police Department of the City of New York into more than three platoons or ordering the patrolmen to work more than one 8-hour tour of duty in any consecutive 24-hour period or to work more than 40 hours in any seven consecutive day period. By their complaint, plaintiffs seek judgment on the first cause, enjoining and restraining defendants from breaching the current collective bargaining agreement with the plaintiff Patrolmen’s Benevolent Association *557 or taking any action which would be inconsistent with the three-platoon system as it has existed prior to agreement; and for judgment on the second cause of action, declaring that chapter 177 of the Laws of 1969 be declared unconstitutional, and that section 1 of chapter 360 of the Laws of 1911, as amended by chapter 1005 of the Laws of 1966, as it existed prior to such amendment be continued in full force and effect and unamended; and for judgment on the third cause, declaring that chapter 177 of the Laws of 1969 does not apply to the current collective bargaining agreement, or, in the alternative, that application of the statute to it would be unlawful and unconstitutional.
Defendants cross-move for summary judgment dismissing the complaint.
The current bargaining agreement runs from October 1, 1968 to December 31, 1970. Plaintiffs urge that the proposed four-platoon system will affect caliber of performance, devotion to duty, night differential, overtime, and disruption of family social life and welfare. Assuming these effects will occur, it is also made manifestly clear that these effects would be acceptable if the members of the police force received something in exchange, a quid pro quo.
Otherwise plaintiffs urge that by the current collective bargaining agreement the city is committed to. the three-platoon system, and that chapter 177 of the Laws of 1969 is unconstitutional upon the ground that it denies equal protection of the laws, and as applied to the agreement it impairs the obligation of contract.
With respect to discrimination and denial of equal protection of the laws, the matter may be quickly resolved. That New York City stands in a peculiar and different situation or classification within the State of New York was, in fact, recognized by section 1 of chapter 360 of the Laws of 1911 before its amendment, for by the amendment there were deleted therefrom the words “including the City of New York”. The implications to be derived from the use of those words are plain. Replacing those words in the amendment are the words “ except the City of New York Police Department ”. The amendment continues: “In the city of New York, the police commissioner shall promulgate duty charts for members of the police force which distribute the available police force according to the relative need for its services. This need shall be measured by the incidence of police hazard and criminal activity or other similar factor or factors. No member of the force shall be assigned to perform a tour of duty in excess of eight consecutive hours excepting only that in the event of strikes, riots, *558 conflagrations or occasions when large crowds shall assemble, or other emergency, or on a day on which an election authorized by law shall be held, or for the purpose of changing tours of duty so many members may be continued on duty for such hours as may be necessary. No member shall be assigned to an average of more than forty hours of duty during any seven consecutive day period except in an emergency or as permitted in this subdivision or for the purpose of changing tours of duty or as otherwise provided for by law.”
The exceptions as contained in chapter 1005 of the Laws of 1966 before amendment read: 1 ‘ excepting only that in the event of strikes, riots, conflagrations, or occasions when large crowds shall assemble, or other similar emergency, or on a day on which an election authorized by law shall be held, or for the purpose of changing tours of duty, so many of said platoons, or of the members thereof, may be continued on duty for such hours as may be necessary.”
The statistical charts furnished by defendants disclose, among other things, that is the 6:00 p.m. to 2:00 a.m. period, the incidence of crimes of personal violence is 47.1% and of calls for service 44.6% of the daily incidence of crimes and calls for service, while less than 35% of the force is on duty. Other or similar emergency rests in the highly accentuated possibility, if not probability, of the arising of a special emergency because of the very high potential created by a country-wide unrest which finds the possibility of an extremely high degree of explosiveness in New York City. In any event no triable issue is raised on the contention that equal protection of the law is denied, and no further argument is needed to establish proper constitutional basis for the classification.
Before proceeding with the contention of unconstitutional impairment of contract, the contention that the city, by the current agreement, committed itself to the three-platoon system should be considered. Petitioners point to no specific provision in the agreement which does so, and all prior negotiations are merged in the agreement. The attempt to place such interpretation on other provisions is void of legal effect. Actually, it is plaintiffs ’ argument that it can support the contention, with the testimony of witnesses, that it was the intent of the bargaining parties that the city be committed to the three-platoon system. The plaintiffs have failed to establish the contention by affidavits, and no testimony would be admissible, for the agreement needs no aid of that character for its interpretation or construction. To the extent a three-platoon system *559 may apply, it would result only from statute; and that presents the remaining question.
First, it should be noted that the charts promulgated under Personnel Order No. 33/69 of March 28, 1969 continue the annual tours in the usual number, 261, and tours of no more than 8 hours each day and no more than 5 such tours in each week, no more than 40 hours each week and the same number of Saturdays and Sundays off duty, with excusal periods of 56 hours or more.
By the 1969 amendment the three-platoon system was substantially continued, but the words “ including the City of New York ” were deleted and the words “ except the City of New York Police Department ” were added. Exceptions heretofore quoted, as contained in section 1 of chapter 360 of the Laws of 1911 prior to amendment, are continued in substantially the same language in the 1969 amendment as follows: “ excepting only that in the event of strikes, riots, conflagrations, or occasions when large crowds shall assemble, or other similar emergency, or on a day on which an election authorized by law shall be held, or for the purpose of changing tours of duty, so many of said platoons, or of members thereof, may be continued on duty for such hours as may be necessary.”
Plaintiffs argue that the amendment does not mandate but permits the demise of the three-platoon system by averaging. On the contrary, the amendment permits a four-platoon system in the City of New York, and it is not demonstrated that the charts promulgated after the amendment and pursuant to the special order purport to effect averaging. In any event, should averaging be attempted or occur, it may give rise to some ground of complaint but would not support the contentions now urged that the amendment is unconstitutional as denying the equal protection of the laws or impairing the obligation of contract.
In addition, the agreement does not permit averaging and the amendment does not order it. With respect to averaging the amendment states: “No member shall be assigned to an average of more than forty hours of duty during any seven consecutive day period ”. This language, the plaintiffs urge, is vague, since it provides for an open ended system and thereby could conceivably result in prolonged weekly tours of excessive hours with no assurance as to when the average would be reached. On the contrary, the language is perfectly clear and the argument is. based on mere speculation as to what may be done in the future. At this point it is not demonstrated that *560 the charts achieve any impermissible averaging, or that the charts would result in a workday of more than 8 hours or a workweek of more than 40 hours.
Apart therefrom and although the subject was often mentioned in the past several years it cannot be successfully argued that the city did, on this occasion, expressly commit itself to a three-platoon system. The basic question is whether the amendment in any way impairs the contract, and if it does, whether such impairment is unconstitutional.
The question is to be considered in the light of the proposition that governmental functions and responsibilities cannot be surrendered by contract (Stone v. Mississippi, 101 U. S. 814; Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398; Butcher’s Union Co. v. Crescent City Co., 111 U. S. 746; Atlantic Coast Line v. Goldsboro, 232 U. S. 548; Matter of Matson, 293 N. Y. 476) where police power and public safety and welfare are involved. Thus, in Manigault v. Springs (199 U. S. 473, 480), cited with approval in Matter of Matson (supra) the court stated: “ It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected.” Existing law is indeed read into contracts, but, as stated in Home Bldg. & Loan Assn. v. Blaisdell (supra, pp. 434-435) the court stated: “Not only is the constitutional provision qualified by the measure of control which the State retains over remedial processes, but the State also continues to possess authority to safeguard the vital interests of the people. It does not matter that legislation appropriate to that end ‘ has the result of modifying or abrogating contracts already in effect.’ Stephenson v. Binford, 287 U. S. 251, 276. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while,— a government which retains adequate authority to secure the peace and good order of society. This principle of harmonizing the constitutional prohibition with the necessary residiuum of state power has had progressive recognition in the decisions of this Court.”
*561 Thus the enactment of the special legislation under the Home Rule Law is violative neither of the impairment of contract nor equal protection of the law provisions of the State or Federal Constitutions (Farrington v. Pinckney, 1 N Y 2d 74).
The cross motion for summary judgment is granted. The main motion is denied.